# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Jaysen Alexander Patterson,<br><br>　　　Plaintiff<br>v.<br><br>Julio Calderin, et al.,<br><br>　　　Defendants | Case No.: 2:19-cv-00784-JAD-VCF<br><br>**Order Screening<br>Complaint and Denying<br>Motion for Preliminary Injunction**<br><br>[ECF No. 3] |

　　　Plaintiff Jaysen Alexander Patterson brings this civil-rights action under 42 U.S.C. § 1983 for alleged violations of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and her First Amendment, Fourteenth Amendment, and state-law rights during her incarceration at High Desert State Prison (HDSP).[1] She also moves for a preliminary injunction to stop the prison from disallowing her to declare her faith as Native American by enforcing its ethnicity and tribal-enrollment requirement. Because Patterson applies to proceed *in forma pauperis*,[2] I screen her complaint under 28 U.S.C. § 1915A. I find that she has pled colorable RLUIPA, free-exercise-of-religion, and equal-protection claims, so I permit those claims to proceed. But first, I stay the case for 90 days and refer the case to the Inmate Early Mediation Program. I deny Patterson's motion for preliminary injunction[3] because her admitted ability to practice this chosen religion at this time prevents her from establishing irreparable harm.

---

[1] Because Patterson is a transgender woman who prefers female pronouns, I use the same. ECF No. 1-1 at 3.

[2] ECF No. 5.

[3] ECF No. 3.

## I. Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[4] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[5] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[6]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle her to relief.[7] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[8] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[9] but a plaintiff must provide more than mere labels and conclusions.[10] "While legal conclusions can provide the framework of a

---

[4] *See* 28 U.S.C. § 1915A(a).

[5] *See* 28 U.S.C. § 1915A(b)(1)(2).

[6] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[7] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[8] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[9] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

complaint, they must be supported with factual allegations."[11] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

## II. Screening Patterson's complaint [ECF No. 1-1]

Patterson sues Defendants Chaplain Julio Calderin, Warden Brian Williams Sr., NDOC Director James Dzurenda, and Doe grievance responder for events that took place while Patterson was incarcerated at HDSP.[13] Patterson alleges six counts and seeks monetary, declaratory, and injunctive relief.[14]

In her complaint, Patterson alleges the following[15]: Patterson is a non-native inmate without tribal enrollment.[16] On September 5, 2018, Patterson sent an inmate request form[17] and attached a Faith Group Affiliation Declaration Form[18] to Calderin requesting to change her faith from Thelema to American Indian/Native American and requested to be placed on the list for Native American religious services.[19] On September 8, 2018, Calderin responded on the DOC 3012, "you need tribal papers."[20] Calderin did not reply to the DOC 3503, which provided a space for Calderin to either approve or deny Patterson's request to change faiths.[21]

---

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[12] *Id.*
[13] ECF No. 1-1 at 1.
[14] *Id.* at 17, 23.
[15] These facts are a summary of Patterson's allegations and theories; they are not findings of fact.
[16] *Id.* at 3.
[17] DOC 3012
[18] DOC 3503
[19] *Id.* at 4.
[20] *Id.*
[21] *Id.*

3

On September 12, 2018, Patterson sent another DOC 3012 and attached a DOC 3503 to Calderin to change her faith to American Indian/Native American.[22] On the DOC 3012, Patterson noted that it was her second request because Calderin had neither approved nor denied Patterson's DOC 3503.[23] Patterson urged Calderin to please approve or deny the form this time and to put Patterson on the Native American services list, if approved.[24]

On September 18, 2018, Calderin responded "no tribal papers" to the DOC 3012 and again failed to address the DOC 3503.[25] On September 21, 2018, Patterson sent a DOC 3012 to Williams about Calderin's failure to answer her DOC 3503 and requested a change to her faith and to be put on the list for Native American religious services. Williams did not respond.[26]

On October 15, 2018, Patterson filed an informal grievance.[27] On November 30, 2018, Calderin responded and cited administrative regulation (AR) 810.3(9)(B)(a)-(c). The AR stated that an inmate had to provide proof of Native American ethnicity and/or proof of a federally recognized tribe enrollment number before the inmate could participate in the sweat lodge or pipe ceremonies. Calderin denied Patterson's grievance because she could not satisfy this AR requirement. Calderin used the AR to justify his failure to approve the DOC 3503 and to deny Patterson access to the Native American religious grounds.[28]

---

[22] *Id.*
[23] *Id.* at 4.
[24] *Id.* at 5.
[25] *Id.* at 5.
[26] *Id.*
[27] *Id.*
[28] *Id.*

On December 2, 2018, Patterson appealed.[29] On January 10, 2019, Williams denied the appeal and stated that he would refer the issue to the Religious Review Team.[30] That day, Patterson appealed to the final grievance level. Patterson never received a response.[31]

On January 30, 2019, Patterson sent Calderin a DOC 3012 to be put on the Native American list to participate in the sweat lodge ceremony and attached another DOC 3503 to change her faith to American Indian/Native American.[32] On February 5, 2019, Calderin responded to the DOC 3012, "done" but failed to answer the DOC 3503.[33]

Since February 26, 2019, prison officials have permitted Patterson to attend Native American religious services weekly and to participate in the sweat lodge and pipe ceremonies.[34] By permitting Patterson to attend the Native American religious services, Calderin has violated NDOC policy. Patterson states that her ability to practice her Native American beliefs may be terminated at any time because she has been unable to affirmatively change her faith to Native American. Additionally, because she cannot change her faith to Native American, she cannot obtain unique religious items like a medicine bag or dream catcher.[35]

From September 5, 2018, through February 25, 2019, Patterson was unable to perform tasks and ceremonies central to her beliefs such as smudging, using the sweat lodge, and participating in the pipe ceremonies, drum circles, or prayer circles.[36] Patterson claims that she

---

[29] *Id.*
[30] *Id.* at 6.
[31] *Id.*
[32] *Id.* at 7.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 7–8.

5

was discriminated against and denied "religious exercise" because she could not satisfy the ethnicity or enrollment requirement in AR 810.3(9)(B)(a)-(c).[37] No other religious group within AR 810 had an ethnicity requirement or proof of enrollment.[38]

The ethnicity or enrollment requirement for Native American services only applies to the sweat lodge and pipe ceremonies.[39] The AR does not require an ethnicity or enrollment requirement to change one's faith to American Indian/Native American or to access the religious grounds for group prayer, smudging, or drum circles. Patterson alleges that defendants misapplied their own policy to deny her access to religious services and practices, and though she has now been given access, because she is not ethnically Native American and lacks tribal enrollment, prison officials could terminate her access to the sweat lodge and pipe ceremonies at any time.[40]

Patterson alleges that Calderin, Williams, and Doe grievance responder could have remedied the issue but failed to do so.[41] She contends that Calderin and Williams discriminated against her based on her race and misapplied AR 810, while Dzurenda discriminated against her through the AR.[42] Based on these events and theories, Patterson asserts claims under RLUIPA (claim 1), and for violations of her First Amendment free exercise of religion rights (claim 2), Fourteenth Amendment equal-protection right (claim 3), and state law (claims 4, 5, and 6).[43]

---

[37] *Id.* at 8.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 10.
[41] *Id.* at 9.
[42] *Id.*
[43] *Id.* at 4, 11–13, 16–17.

### A. RLUIPA

RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[44] RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[45] "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise [her] religious beliefs."[46] The plaintiff bears the burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of [her] religious beliefs.[47] "Claims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the reasonableness standard employed in cases involving constitutional violations."[48] A plaintiff may sue under RLUIPA for injunctive relief but not monetary damages.[49]

I find that Patterson states a colorable RLUIPA claim for injunctive relief. Based on the allegations, although Patterson is currently able to participate in her Native American religion and ceremonies, the policy that prevented her from participating in her religion are still active

---

[44] 42 U.S.C. § 2000cc-1(a)(1)-(2).

[45] 42 U.S.C.A. § 2000cc-5(7)(A).

[46] *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)).

[47] *Id*. at 994.

[48] *Shilling v. Crawford*, 536 F.Supp.2d 1227, 1232 (D. Nev. 2008).

[49] *Sossamon v. Texas*, 563 U.S. 277, 280 (2011) (holding that the States, by accepting federal funds, do not consent to waive their sovereign immunity to suits for money damages); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (holding that "RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding").

prison regulations. Based on the allegations, although prison officials are choosing to ignore the stated regulations, Patterson argues that prison officials could decide to enforce them at any time which would prevent her from participating in sweat lodge and pipe ceremonies because she cannot meet the ethnicity or tribal enrollment requirements. This claim will proceed against Defendants Calderin, Williams, Dzurenda, and Doe grievance responder (when Patterson learns his or her identity)[50] for injunctive relief only.

### B. Free Exercise of Religion

The First Amendment to the United States Constitution prohibits Congress from making any laws that prohibit the free exercise of religion.[51] The United States Supreme Court has held that inmates retain this right despite incarceration, with some limitations.[52] Those limitations "arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security."[53] To state a free-exercise violation claim, the plaintiff must establish that her "proffered belief [is] sincerely held" and that "the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'"[54] During summary judgment, courts evaluate prison regulations alleged to infringe

---

[50] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendants comes to light during discovery, Patterson may either move to substitute the true names of Doe Defendants or move to amend her complaint to assert claims against the Doe Defendants at that time.

[51] U.S. Const. amend. I.

[52] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

[53] *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).

[54] *Id*.

on constitutional rights under the "reasonableness" test established in *Turner v. Safley, O'Lone v. Estate of Shabazz*, and *Hrdlicka v. Reniff*.[55]

I find that Patterson states a colorable free-exercise of religion claim against Calderin, Williams, and Doe grievance responder. She alleges that these actors initially prohibited her from practicing her chosen religion and accessing the Native American religious grounds. Patterson also states a colorable free-exercise claim against Dzurenda. "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation . . . Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"[56] Based on the allegations, Dzurenda created the ethnic/tribal enrollment policy that prevented Patterson from practicing her religion. So this free-exercise claim will proceed against Defendants Calderin, Williams, Dzurenda, and Doe grievance responder (once Patterson learns his or her identity and successfully moves to substitute that identity for this "Doe" place-holder).

### C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law.[57] In order to state an equal-protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent

---

[55] *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), *Shabazz*, 482 U.S. at 349; *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046–50 (9th Cir. 2011) (analyzing the *Turner* factors applied during summary judgment on appeal).

[56] *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

[57] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

9

and purpose to discriminate against her based upon membership in a protected class, or that defendants purposefully treated her differently than similarly situated individuals without any rational basis for the disparate treatment.[58]

I find that Patterson states a colorable equal-protection claim. She alleges that prison officials intentionally prevent non-ethnic Native Americans from declaring their religion as American Indian/Native American and from participating in Native American religious practices. These allegations are sufficient at this preliminary screening stage to state a colorable claim and allow this claim to proceed against Defendants Calderin, Williams, Dzurenda, and Doe grievance responder (once identified and substituted in).

### D. State-law Claims

Patterson alleges state-law claims for negligence/gross negligence (claim 4), negligent infliction of emotional distress (claim 5), and intentional infliction of emotional distress (claim 6).[59] Under Nevada law, the State of Nevada has generally waived sovereign immunity for state tort actions in state court.[60] In order to sue the State of Nevada or a state employee, the plaintiff must sue the State of Nevada or appropriate political subdivision.[61] "In any action against the State of Nevada, the action must be brought in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit."[62]

---

[58] *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[59] ECF No. 1-1 at 13, 16–17.

[60] Nev. Rev. Stat. § 41.031(1).

[61] Nev. Rev. Stat. §§ 41.031, 41.0337.

[62] *Id.* § 41.031(2).

10

In *Craig v. Donnelly*,[63] the Nevada Court of Appeals addressed whether a plaintiff had to name the State as party in a *state* court case and held that "while a plaintiff must name the State as a party to any state tort claims in order to comply with NRS 41.031 and NRS 41.0337, this statutory requirement does not apply to 42 U.S.C. § 1983 claims, even when brought in the same complaint as a plaintiff's state tort claims. Indeed, the State cannot be named as a party to a plaintiff's § 1983 civil rights claims."[64] With respect to *federal* court cases, the State of Nevada does not waive its immunity from suit conferred by the Eleventh Amendment.[65] Generally, the State of Nevada and arms of the state cannot be sued in federal court.[66] In *Stanley v. Trustees of California State University*,[67] the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state-law claims.[68] Although the State of Nevada may consent to federal court jurisdiction for state-law claims through removal, this is not a removed case.[69] So, the bottom line here is that Patterson must raise her state-law claims in state court. I therefore dismiss Patterson's state-law claims because they are barred by the Eleventh Amendment.[70]

---

[63] *Craig v. Donnelly*, 439 P.3d 413 (Nev. App. 2019).

[64] *Id.* at 414.

[65] Nev. Rev. Stat. § 41.031(3).

[66] *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states").

[67] *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, (9th Cir. 2006).

[68] *Id.* at 1133-34.

[69] *See Lapides v. Bd. of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) (holding that state's removal of suit to federal court constitutes waiver of its sovereign immunity).

[70] *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities indispensable parties in a state tort claim against a state employee,

III.     **Motion for preliminary injunction [ECF No. 3]**

Patterson has filed a motion for preliminary injunction based on the allegations in her complaint.[71] She seeks "a prohibitory injunction against the Defendants . . . to refrain them from enforcing the ethnicity requirement and tribal enrollment requirement in Administrative Regulation 810.3(9)(B)(a)-(c) against [her] in regards to her desire to declare her faith as and practice her Native American Beliefs."[72]

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."[73] "A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest."[74] The Prison Litigation Reform Act (PLRA) further requires that preliminary injunctive relief be "narrowly drawn," "extend no further than necessary to correct the harm," and be "the least intrusive means necessary to correct the harm."[75]

I deny Patterson's motion for preliminary injunction[76] without prejudice because Patterson cannot that she will suffer irreparable harm in the absence of preliminary relief. Patterson admits that she is able to practice her religion at this time and has been since February

---

the federal court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction over the indispensable party).

[71] ECF No. 3.

[72] *Id*. at 1.

[73] *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).

[74] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

[75] 18 U.S.C. § 3626(a)(2).

[76] ECF No. 3

26, 2019.[77]  If that changes, Patterson may move for the appropriate preliminary relief at that time.

## Conclusion

IT IS THEREFORE ORDERED that

- Claims 4, 5, and 6 (state law claims) are DISMISSED without prejudice and without leave to amend; but

- Claim 1 (RLUIPA-injunctive relief), Claim 2 (free exercise of religion), and Claim 3 (equal protection) against Defendants Calderin, Williams, Dzurenda, and Doe grievance responder (when Patterson learns his or her identity) MAY PROCEED.

- The Clerk of the Court is directed to **FILE** the complaint [ECF No. 1-1] and **SEND** Patterson a courtesy copy.

IT IS FURTHER ORDERED that the motion for preliminary injunction **[ECF No. 3] is DENIED** without prejudice.

Given the nature of the claim that the court has permitted to proceed, IT IS FURTHER ORDERED that **this action is STAYED for 90 days** to allow Patterson and the defendants an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery. **I refer this case to the Court's Inmate Early Mediation Program** and will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation

---

[77] *Id.* at 2.

for dismissal is entered before the end of the stay. If the parties proceed with this action, the Court will then issue an order setting a date for defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Patterson's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

If the case does not settle, Patterson will be required to pay the full $350.00 filing fee. This fee cannot be waived. I defer my decision on the application to proceed *in forma pauperis* [ECF No. 5] until after the mediation process. If Patterson is allowed to proceed *in forma pauperis,* she will be permitted to pay the fee in installments from her prison trust account; if not, the $350.00 will be due immediately.

If any party desires to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" within 21 days of this order. The responding party will have seven days to file a response, and no reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to electronically **SERVE** a copy of this order and a copy of Patterson's complaint [ECF No. 1-1] on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

IT IS FURTHER ORDERED that **the Attorney General's Office must advise the Court within 21 days of this order whether it will enter a limited notice of appearance on**

**behalf of defendants** for the purpose of settlement.  The filing of the limited notice of appearance will not constitute waiver of any defense or objection.

Dated: March 4, 2020

_____
Jennifer A. Dorsey, U.S. District Judge

||   | UNITED STATES DISTRICT COURT |
|---|---|
| 1 | |
| 2 | DISTRICT OF NEVADA |
| 3 | |
| 4 | Jaysen Alexander Patterson,     Case No.: 2:19-cv-00784-JAD-VCF |
| 5 |      Plaintiff |
| 6 | v.     **Attorney General's Report of Results of 90-Day Stay** |
| 7 | Julio Calderin, et al., |
| 8 |      Defendants |

**NOTE: This form must be filed only by the Office of the Attorney General. The inmate plaintiff MUST NOT file this form.**

On March 4, 2020, the Court issued its screening order stating that it had conducted its screening under 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies with that order.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

1

  ___ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

  ___ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

  ___ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

  ___ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

  * * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

  ___ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

  ___ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

  ___ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

  ___ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

            Signature: _____

            Name: _____

            Phone #: _____

            Email: _____